Good morning, Your Honors. Kurt Hermanson on behalf of Mr. Lopez, if I could reserve two minutes. Of course. Just keep an eye on the clock, Mr. Hermanson. Thank you. Your Honors, in this case, defense counsel admitted that he didn't know immigration law, and that tainted and poisoned everything. His decisions cannot be deemed strategic, even under the deferential standards of Strickland and 2254-D. The decisions were on prejudice, not on deficiency. I'm sorry, Your Honor? The operative decisions that we're reviewing were made on the footing that regardless of his deficiency, there was no prejudice. So they were made on the second prong of Strickland, not the first. So his deficiencies really aren't particularly relevant. So why don't you talk to us about prejudice? The prejudice in this case comes from two things. First, because defense counsel didn't know that the possession for sale counts were the ones that he needed to focus on and target, it influenced how he advised the client. It influenced how he proceeded in trial. He did an all-or-nothing approach to trial. So the prejudice is that if he hadn't misconstrued the law instead of an all-or-nothing approach, he would have called the defendant to testify. And that would have been required, because under Jones v. Barnes, that's the defendant's decision. And in the defendant's declaration, he says, I would have testified if I had been properly advised. You know, it's interesting. He did try to negotiate a plea to possession only, and he did it for the purpose of avoiding immigration consequences, according to this record. It's very interesting that the position now taken is that, gosh, he didn't know anything about immigration, since his very first step was try to negotiate a straight possession plea. How do we deal with that? He was trying to negotiate a straight possession plea, but he doesn't say that it was the reason that he was doing it to avoid immigration consequences. He doesn't say one way or the other on the declarations I've looked at, but the prosecutor says when he talked to us, that's what he said. He was trying to negotiate a possession plea to avoid immigration problems. Well, he was, without doing any research or looking at the law, he was hoping that it might help the client. But he admits under oath in the sworn declaration that he was ignorant of the law and didn't realize that there were other possible things. Counsel, maybe I missed something, but how I read the record was defense counsel knew that his client was an alien who, if convicted, would be deported. I think what you're trying to argue is he was ignorant of the fact that if he were able to work out a deal to a different charge, then maybe he could avoid the adverse consequences of a conviction on possession for sale. Isn't that your argument? That's one argument, but the primary argument is that because he was ignorant of the law, which he admits under oath, his whole strategy of going to trial was tainted. Well, part of the problem when you're faced with these charges and a client who's an alien is, in some respects, it is an all or nothing game. If the prosecution will not accept a plea to a lesser count that doesn't have immigration consequences, then it may be the best defense that counsel can mount to simply try and win on the merits and convince the jury that he didn't possess with intent to distribute. He was a refugee who already had asylum. He had been granted asylum in San Diego and because of the abuse and torture that he had received in Mexico, used drugs, and he was ready to testify and admit that he was a drug user. But didn't counsel say he understood that if he were convicted, notwithstanding the fact that he was an asylee, that he could be deported? That's where the state court got it wrong and he got it wrong. That's where both the state court and defense counsel got it wrong. He thought that no matter what he was convicted of, he would have been deported if it was the syringes, the ketamine, the cocaine, the marijuana, any of those drugs, just possession of cocaine. He thought that that would be enough and he was wrong. And as this court, as Your Honor said, wrote in Penholzer v. Ayers, the reasonableness of counsel's trial strategy depends critically on informed strategic choices made by the defendant on information supplied by the defendant. Here he told him that he was going to decide. Are you reading from my panel opinion that was ultimately vindicated by the Supreme Court? Is that what you're trying to do? I am reading from that, Your Honor, and it was vindicated by the Supreme Court. And your reasoning in that case was that it's the defense counsel who – I mean it's the defendant who decides that he's going to testify. And it's – so here defense counsel never gave him that choice, never properly advised him that, hey, here's a completely different way of going about the case. Instead of this all-or-nothing, ridiculous, all-or-nothing approach where you sit there silent, instead the trial could be, hey, you get on the stand, and all of your friends who submitted declarations under oath, sworn declarations under oath, can get on the stand and say you are not a drug seller, that we are all going to go – The California Court of Appeal looked at the evidence that was found in the search of the drug den, did they not? The California – And found that, in essence, it would have been difficult for your client to convince a jury that he was merely a user because of the fact that there were scales and baggies and that sort of thing, right? No. The California Court of Appeal opinion is two pages. It's at 1er, 9, and 10. So the California Supreme Court summary denial, we looked through that under Ilse v. Notemaker to this two-page opinion where Judge Benke says the declarations offering support of this claim are from addicts who used drugs with Lopez and state, among other things, that they had never seen him sell drugs and believe that he never sold drugs. Counsel, I'm not sure you heard my question. That's all they said. That's all it says. Counsel, let's try answering the question I asked you. Was there not evidence in the record that when the search warrant was executed on the premises, there were paraphernalia consistent with drug distribution found in the apartment? Yes. Very well. But the Court of Appeal – Why can't the court consider that in looking at the evidence in order to determine whether or not there was prejudice here? You can, definitely. But when we look at the case, it's completely different if he testifies and all those people, all those declarations, numerous declarations, that he didn't use intravenous drugs, so obviously the syringes belonged to someone else. Other people saw them. The difficulty with those declarations is that they say what his friends did not see. But that's an irrelevant or an immaterial statement. It's what you do see that matters. Right. And what they did see is that the drugs were theirs, and they claim ownership of the drugs, which is against their interest, and I see my – I only have two minutes. Do you want to stay for the rest of your time? Yes, please. Okay, very well. We'll hear from the State. Good morning, Your Honors. Anthony DeSilva, Deputy Attorney General for the Respondent. In this case, we had review not only by a trial court, which issued an order to show cause and receive all this evidence, an appellate court that took notice not only of the trial records but also the habeas proceedings, and the California Supreme Court, which also issued an order to show cause and receive additional briefing. All three courts and the district court rejected the claims that are now being made on appeal. I don't know if this court received the two letters that we submitted, signing Harrington v. Richter and Cullen v. Penholster. We did. We did. And I believe both cases strengthened the positions taken by the district court. If I just may, regarding the declaration of the attorney, Mr. Bessie, at the second volume of the excerpt of record at page 46, paragraph 3 says, I advise Mr. Lopez he might be deported as a result of the conviction in that case. At paragraph 5, Mr. Bessie states, I did advise Mr. Lopez, however, that deportation and exclusions from readmission was mandatory for possession for sale offenses, which are aggravated offenses under federal law. Just as an aside to the comment, so Mr. Bessie did inform Mr. Lopez that there were potential adverse immigration consequences based on the aggravated charge of the possession of the cocaine, the methamphetamine, and the marijuana for sale. But as I understand Mr. Hermanson's argument, what he's saying is that criminal defense counsel was not sophisticated enough to have known that there might have been another felony that was punishable by a greater term of imprisonment that he should have tried to get the San Diego district attorney to agree to take a plea to, which would not be considered an aggravated felony under the immigration statutes.  That is correct, Your Honor. That would have been, the pitch was the Bautista case, where there may have been a possibility of an upward plea. In Bautista, you had an expert counsel who testified that he had pursued such a plea in five cases, I think successfully in two. There's no contrary evidence. In this case, we had the declarations of the deputy district attorneys, Kathleen Lewis and Greg Walden, that unequivocally stated that the San Diego district attorney's office would not have pursued such a case to avoid immigration consequences and not in Mr. Lopez's case. Unless the court has any questions, I will submit on the briefing. Judge Reimer, anything? No, thank you. Okay, good. Thank you, Your Honor. Thank you very much. I would just say that to be consistent with Penhalter v. Ayers, where this court said that when reviewing an IAC claim attorney's trial strategy, it's important to note that the defendant's Sixth Amendment rights are his alone. And when we're looking at the advice given to a defendant, we have to look at the advice that was given to him. He was not advised correctly on immigration law. He was told that possession for sale and all the... He was... The defense attorney proceeded under the misconception that any of the charges would result in the loss of asylum. That was incorrect. He incorrectly advised his client. And so Mr. Lopez, proceeding on that advice, did not testify at trial. He was denied that right. And that shows prejudice. So getting to Judge Reimer's question about prejudice, we can't say that the trial would have been the same. If Mr. Lopez had testified, if all the people who admit to storing their drugs in the apartment testified, the trial would have been completely different. So there really are... And this court doesn't... And when you look at the two-page opinion, it's questionable whether or not the court of appeal, which is the last reason opinion, you know, it doesn't cite Strickland. It doesn't apply Strickland. It just concludes in a conclusory fashion that the outcome, even assuming that counsel is ineffective, that the outcome wouldn't have been different. So there's no analysis, and that was unreasonable. Thank you. Thank you very much. The case just argued is submitted. The next case on the calendar, Petrosian, is also submitted on the briefs, and we'll hear argument in Stevens-Stearns v. Ticketmaster.
judges: Fernandez, Rymer, Tallman